## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JACOB T. MILLS,            )
                            )
           **Plaintiff,**      )
v.                       )     **Case No. CIV-20-273-RAW-SPS**
                            )
KILOLO KIJAKAZI,[1]       )
**Acting Commissioner of the Social**  )
**Security Administration,**      )
                            )
           **Defendant.**     )

## REPORT AND RECOMMENDATION

The claimant Jacob T. Mills requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty years old at the time of the administrative hearing (Tr. 55, 187).  He completed the eleventh grade while homeschooled, and has no past relevant work (Tr. 33, 214).  The claimant alleges he has been unable to work since January 9, 2019, due to a liver transplant completed in 1999 and a compromised immune system, headaches, hemorrhoids, weakness, and a cyst on his kidney (Tr. 213).

## Procedural History

On January 9, 2019, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His application was denied.  ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 26, 2019 (Tr. 28-34).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found at step four that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b).  The ALJ thus concluded at step five that although the claimant had no past relevant work to return to, he was nevertheless not

disabled because there was work he could perform, *e. g.*, office helper, sale attendant, and mail sorter (Tr. 33-34).

## Review

The claimant contends that the ALJ erred by: (i) failing to find he had additional severe impairments that were side effects of his liver transplant, and (ii) failing to properly assess the consistency of his complaints. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairment of status post liver transplant, as well as the nonsevere impairments of allergic rhinitis, low blood sugar, headaches, hemorrhoids, kidney cyst, and fatigue (Tr. 30). The relevant medical evidence reveals that the claimant underwent a liver transplant at the age of two months, in 1999. He has undergone two livery biopsies to check for rejection, but there have been no significant episodes of rejection for the claimant (Tr. 303, 565). In June 2018, the claimant had a skin rash and dry skin of his upper extremities and back, but otherwise had no fever, nausea, vomiting, or diarrhea (Tr. 306).

Shortly before the amended onset date of January 9, 2019, the claimant presented to the emergency department with rectal bleeding on November 1, 2018 (Tr. 294). A CT scan revealed no acute findings, but a possible cyst (Tr. 299). He was discharged that same day and advised to follow up with his doctors (Tr. 297). A follow-up appointment showed that the claimant's treating physician found it was likely hemorrhoidal (Tr. 348, 466). By March 2019, the claimant denied further bleeding from the rectum (Tr. 451). At that same

doctor visit, the claimant noted he was planning a two-week trip to visit friends in Washington state (Tr. 451).

State reviewing physicians initially and upon review found that the claimant could perform the full range of light work (Tr. 88-89, 100-101).

At the administrative hearing, the claimant testified that he did not believe he could work due to the side effects from his medicine and from his transplant (Tr. 61). He stated that his side effects included fatigue, dry skin and itchiness, headaches, stomachaches, and weakness, as well as nausea and diarrhea (Tr. 62). However, he also stated that he did not want to take any medication for his diarrhea or nausea, although he did have a prescription for the itchiness/rash (Tr. 63). When asked why his medical records stated that he was doing well, with no headaches, fatigue, or weakness, the claimant responded that his transplant physician was focused on his liver and not rejecting it (Tr. 64-65). When asked about physical limitations, the claimant stated that he could not do heavy lifting due to general weakness, but that he generally walked (Tr. 65-66). The claimant stated that he had never applied for a job, even a part-time position, but that he did not have a reason for not applying (Tr. 67). Additionally, he indicated that he was interested in computers, both gaming and programming (Tr. 67). When asked how long each day he spent on the computer, he stated, "Like most of the day really," and when the ALJ stated, "Eight or nine hours a day on the computer?" the claimant agreed, stating, "Yeah." (Tr. 68). He indicated that his only chore at home was taking out the trash and vacuuming his own room, and that he did not drive because his parents had been too busy to teach him (Tr. 69-70). When asked about any other limitations, the claimant stated that he takes bathroom breaks that

are fifteen minutes or longer, due to his gastrointestinal difficulties (Tr. 70-71). Upon further examination by his attorney, the claimant stated that he has days where he cannot get on the computer because he is in the bathroom a lot and that this occurs four to five days per month (Tr. 71-72). He explained that he has a weakened immune system due to the transplant, and that he cannot drink tap water as part of that (Tr. 73).

In his written decision, the ALJ summarized the claimant's hearing testimony (Tr. 31-32), as well as the medical evidence in the record (Tr. 32-33). The ALJ used the typical boilerplate language stating that he found the claimant's statements "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 32). As to the medical evidence, he then noted the two biopsies and lack of evidence of cellular rejection with regard to the transplant (Tr. 32). He noted where the claimant's physician had suggested that the claimant begin moving toward medical independence from having his mother oversee his medications and administration, that the 2018 CT scan showed no acute findings, as well as the April 2019 treatment note indicating that he was planning a two-week trip, that he denied further bleeding in his rectum, and he was largely within normal limits upon physical examination (Tr. 32). He found the state reviewing physician opinions persuasive, noting that the 1999 liver transplant had been successful with no signs of rejection, and he was doing well and able to travel out of state (Tr. 33). He thus concluded that the claimant had "a greater sustained capacity than he alleges," and that his "subjective complaints and alleged limitations are not fully persuasive and that he retains the capacity to perform work" (Tr. 33).

The claimant's first complaint on appeal is that the ALJ failed to consider the side effects of his transplant as severe impairments, and further failed consider them throughout the disability process. First, the undersigned Magistrate Judge notes that, as has been stated repeatedly, any error in finding an additional severe impairment is harmless because the ALJ did find the claimant had a severe impairment (status post liver transplant), which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Indeed, the ALJ discussed all of the evidence in the record, specifically noting that treatment notes found him to be within normal limits upon physical examination and that his bleeding had resolved (Tr. 32). The claimant has pointed to no other evidence in the record, aside from his own assertions, and the ALJ's determination here is entitled to deference. The undersigned Magistrate Judge therefore finds no error. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation

-7-

omitted). Because the undersigned Magistrate Judge finds this argument unavailing, the claimant's assertion that the jobs identified at step five do not account for all his impairments is unavailing.

Next, the claimant contends that the ALJ erred in analyzing his subjective statements. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). See SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and Luna are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. See, *e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis (Tr. 31) and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. As summarized above, the ALJ noted inconsistencies between the claimant's subjective statements and the evidence of record, including: (i) he had been prescribed no medications for his alleged side effects and did not know why the side effects were not reflected in the medical record; (ii) he complained of weakness but traveled with a good deal of walking in an airport, which was not that bad; (iii) the claimant had not experienced transplant rejection; and (iv) his physical exams were largely within normal limits (including no nausea or diarrhea) (Tr. 31-33).

There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

The ALJ specifically noted the medical records available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**